**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

E.A., an individual,
Plaintiff,
v.
G6 HOSPITALITY, LLC;
G6 HOSPITALITY FRANCHISING, LLC; and
AVA HOSPITALITY LLC d/b/a MOTEL 6 MEMPHIS DOWNTOWN,
Defendants.

Civil Action No.: ____________________
JURY TRIAL DEMANDED

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff E.A., by and through undersigned counsel, and files this Complaint for damages against Defendants, alleging as follows:

## I. NATURE OF THE ACTION

1. This is a civil action for damages under the Trafficking Victims Protection Reauthorization Act (the "TVPRA"), 18 U.S.C. § 1595, arising from the sex trafficking of Plaintiff at a Motel 6–branded hotel operated within the G6 franchise system.

2. Plaintiff was trafficked for commercial sex at the Motel 6 located at 210 South Pauline Street, Memphis, Tennessee 38104 (the "Subject Hotel") in 2023. Defendants G6 Hospitality, LLC and G6 Hospitality Franchising, LLC (together, the "G6 Defendants" or "Franchisor Defendants") franchised, branded, and exercised control over the Subject Hotel, and Defendant Ava Hospitality LLC (the "Franchisee Defendant") owned and operated it.

3. Section 1595 imposes civil liability on any person, or entity, who knowingly benefits from participation in a venture that the person knew or should have known was engaged in sex trafficking. Defendants knowingly benefited from, and participated in, the venture through which

Plaintiff was trafficked at the Subject Hotel, and knew or should have known that the venture was engaged in sex trafficking.

## II. PARTIES

4. Plaintiff E.A. is a natural person and a resident of the State of Washington. Plaintiff proceeds by her initials to protect her privacy and identity given the sensitive and potentially retaliatory nature of the allegations.

5. Defendant G6 Hospitality, LLC is a for-profit Delaware limited liability company with its principal place of business at 6509 Windcrest Drive, Suite 100, Plano, Texas 75024.

6. Defendant G6 Hospitality Franchising, LLC is a for-profit Delaware limited liability company with its principal place of business at 6509 Windcrest Drive, Suite 100, Plano, Texas 75024. The G6 Defendants are the franchisors of the Motel 6 brand and, at all relevant times, owned, operated or co-operated, controlled, and/or managed the Motel 6 brand and the franchise system through which the Subject Hotel operated.

7. Defendant Ava Hospitality LLC, doing business as Motel 6 Memphis Downtown, is, upon information and belief, a for-profit Tennessee limited liability company that owned, operated, controlled, and/or managed the Subject Hotel through the G6 franchise system at all times relevant to this Complaint, and held record title to the real property comprising the Subject Hotel, having acquired title by warranty deed recorded in Shelby County, Tennessee on May 26, 2022.

## III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, namely the TVPRA, 18 U.S.C. § 1595.

9. This Court has personal jurisdiction over the G6 Defendants because each maintains its principal place of business in Texas and in this District. This Court has personal jurisdiction over the Franchisee Defendant because it purposefully availed itself of the privilege of conducting activities in Texas and in this District by soliciting and entering into a franchise relationship with the G6 Defendants in this District; by negotiating, executing, and performing the franchise agreements in this District; by directing payments, reservations, notices, reporting, and other required communications to the G6 Defendants in this District; and by agreeing to Texas law and to suit in this District. Plaintiff's claims arise out of and relate to those contacts.

10. Venue is proper in this District. Under 28 U.S.C. § 1391(b)(1), the G6 Defendants reside in this District, each maintaining its principal place of business in Plano, Texas, in Collin County, within the Eastern District of Texas. Under § 1391(c)(2), the Franchisee Defendant is a resident of Texas for venue purposes because it is subject to this Court's personal jurisdiction with respect to this action, and under § 1391(d), the Franchisee Defendant resides in this District because its contacts with the District would be sufficient to subject it to personal jurisdiction if the District were a separate State. Venue is also proper under § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—including the franchise venture pursuant to which the Subject Hotel was operated, branded, and controlled—occurred in substantial part in Texas and in this District.

11. Plaintiff's claims against the Franchisee Defendant arise out of the Franchisee Defendant's contacts with Texas through its relationship with the G6 Defendants, whose principal place of business is in this District. The Franchisee Defendant's participation in a venture with the G6 Defendants in operating the Subject Hotel occurred, in substantial part, in Texas and in this District because, upon information and belief: (a) the Franchisee Defendant

actively sought out a franchise relationship by contacting the G6 Defendants in Texas; (b) the negotiation, execution, and acceptance of the franchise agreement occurred in this District; (c) the Franchisee Defendant's ongoing performance of the franchise agreement took place, in part, in this District; (d) the franchise agreement contains a choice-of-law provision selecting Texas law as governing; (e) the franchise agreement required the Franchisee Defendant to report information to the G6 Defendants in Texas, including information about incidents involving safety, security, public relations, or serious injuries occurring at or involving the Subject Hotel, including those involving sex-trafficking victims like Plaintiff; (f) the Franchisee Defendant agreed to submit all notices required under the franchise agreement to the G6 Defendants in this District; (g) the Franchisee Defendant was required to attend training and meetings in Texas; (h) the G6 Defendants dictated policies related to safety, security, human trafficking, employee training, and the Franchisee Defendant's response, among other subjects, from their principal place of business in this District; (i) the Franchisee Defendant had an ongoing obligation to participate in centralized programs operated by the G6 Defendants from their principal place of business in this District; (j) the Franchisee Defendant was required to purchase insurance on behalf of one or more Texas entities; (k) reservation information for rooms at the Subject Hotel passed through a system operated and managed by the G6 Defendants from their principal place of business in Texas; (l) payment information for rooms at the Subject Hotel passed through a system operated and managed by the G6 Defendants in Texas; (m) the benefit that the Franchisee Defendant received from room rentals was governed by the Texas franchise agreement; (n) the Franchisee Defendant agreed to make all payments due under the franchise agreement at the G6 Defendants' principal place of business in this District; (o) the Franchisee Defendant's operation of the Subject Hotel was controlled and influenced by policies set and enforced by the G6

Defendants from their principal place of business in Plano, Texas; and (p) the Franchisee Defendant signed a software licensing agreement with the G6 Defendants for the property-management software the G6 Defendants required it to use in operating the Subject Hotel — including when booking rooms and processing payments — and agreed to file any lawsuit arising from that agreement in the Eastern District of Texas and waived personal-jurisdiction and venue objections.

12. This District is the center of gravity of Plaintiff's claims against the G6 Defendants, whose headquarters, corporate decision-makers, franchise-system administration, brand and safety policies, centralized reservation and payment systems, and the records and witnesses central to Plaintiff's participation-in-a-venture and control allegations are located here. Plaintiff has selected this District as her forum, and her choice is entitled to substantial deference. Because the franchisor conduct at the heart of this action emanated from this District, and because the Franchisee Defendant consented to suit here and waived objections to personal jurisdiction and venue, this District is a proper and convenient forum, and transfer of this action would merely shift any inconvenience from one party to another and is not warranted.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff Was a Victim of Sex Trafficking at the Subject Hotel.

13. Plaintiff was a victim of sex trafficking as defined by 18 U.S.C. § 1591(a): she was recruited, enticed, harbored, and maintained, and was caused through force, fraud, and coercion to engage in commercial sex acts at the Subject Hotel.

14. Plaintiff was trafficked at the Subject Hotel in 2023, returning to the Subject Hotel on a recurring basis throughout that period. She was trafficked by a male trafficker, who was assisted

in the operation of the venture by a female known to Plaintiff by the nickname "KK." Rooms were rented by the trafficker or at the direction of the trafficker. When Plaintiff's trafficker booked and paid for the rooms used for Plaintiff's trafficking, he registered them in his own name, and, at times, rented two to three rooms at a time. Plaintiff was advertised for commercial sex on the internet, including on the websites Megapersonals, SkipTheGames, and Tryst, and sex buyers responding to those advertisements were directed to the Subject Hotel and came directly to the guest rooms.

15. To compel Plaintiff's commercial sex acts, her trafficker used various means of force, fraud, and coercion, including: (a) physical assault and violence; (b) the administration, supply, and control of controlled substances; (c) psychological coercion and manipulation; (d) control and exploitation of Plaintiff; (e) threats of harm and physical violence; and (f) other means of force, fraud, and coercion used by the trafficker. Specifically, Plaintiff's trafficker supplied her with, and controlled her access to, cocaine, and cultivated and exploited her dependency upon controlled substances to compel her compliance; subjected her to repeated physical aggression and verbal abuse; and exercised physical and psychological control and dominion over her throughout the period of her trafficking.

16. Upon information and belief, Plaintiff's trafficker (and the female assisting him) was a recurring presence known to and recognized by the Subject Hotel's staff and management, moving openly through the lobby and common areas and dealing with staff face-to-face throughout her trafficking. The commercial sex acts and physical abuse she endured occurred on the grounds of the Subject Hotel.

**B. The Signs of Plaintiff's Trafficking Were Apparent to Hotel Staff.**

17. During the period Plaintiff was trafficked at the Subject Hotel, there were signs obvious to hotel staff and management that she was being trafficked, including: (a) steady and frequent foot traffic of sex buyers to and from the rooms rented for her trafficking, at all hours of the day and night; (b) the recurring rental of two to three rooms at a time by a single individual who did not occupy all of them; (c) Plaintiff's visibly impaired condition from the controlled substances upon which she was dependent; (d) the audible and visible verbal abuse and physical aggression directed at Plaintiff by her trafficker on the premises, in the presence and within the hearing of staff; (e) the persistent refusal and decline of housekeeping service to the occupied rooms, into which housekeeping staff were not permitted while Plaintiff and her trafficker were present; and (f) the condition of those rooms as observed by housekeeping staff after each departure, including large quantities of used condoms in the trash, drug paraphernalia, and women's undergarments and lingerie left behind.

18. Hotel staff and management observed, or in the exercise of reasonable care should have observed, the foregoing obvious signs of sex trafficking. Upon information and belief, multiple employees—including management-level, front-desk, and housekeeping staff—observed or were made aware of these signs while acting within the scope and course of their employment. The knowledge of the Subject Hotel's staff is imputed to the Franchisee Defendant; and, under the G6 Defendants' protocols requiring hotel staff and management to report suspected criminal activity, including sex trafficking, to the G6 Defendants, such knowledge was or should have been reported to and known by the G6 Defendants.

19. Upon information and belief, the Subject Hotel was equipped with surveillance cameras positioned throughout the property, including its lobby, corridors, entrances, walkways, and

parking areas, the images from which were displayed on monitors at the front desk and were monitored, or required to be monitored, by staff and management. The red flags of Plaintiff's trafficking occurred within the view of those cameras.

20. These red flags were not merely indicators of commercial sex activity but were indicators of sex trafficking specifically, because they included observable signs of force, coercion, and control over Plaintiff. Individually and collectively, they provided Defendants with notice not only of sex trafficking activity generally at the Subject Hotel, but specifically that Plaintiff was being subjected to trafficking through force, fraud, and coercion.

### C. Defendants Knew or Should Have Known of Sex Trafficking at Motel 6 Properties.

21. Sex trafficking at hotels, and at Motel 6–branded properties in particular, is a well-documented and longstanding problem of which Defendants had actual and constructive knowledge. The G6 Defendants generate, receive, monitor, and analyze guest complaints and online reviews concerning their branded properties, including the Subject Hotel, a number of which reported prostitution, drug activity, and other trafficking-related conduct.

22. The G6 Defendants have long been on notice of pervasive sex trafficking at Motel 6 properties, including through litigation and government enforcement. A Los Angeles Motel 6 became such a hub for human trafficking and criminal activity that the G6 Defendants paid to settle a public-nuisance action brought by the City of Los Angeles, the settlement of which required the G6 Defendants to change policies that were facilitating sex trafficking. Upon information and belief, the G6 Defendants failed to adequately implement and enforce those changes.

23. Despite actual and constructive knowledge that sex trafficking was widespread at Motel 6 properties and, specifically, that it was or should have been apparent at the Subject Hotel, Defendants continued to rent rooms at, brand, operate, and derive revenue from the Subject Hotel throughout the period of Plaintiff's trafficking.

**D. Defendants Knowingly Benefited from Participation in a Venture They Knew or Should Have Known Was Engaged in Sex Trafficking.**

24. Through the conduct described above, Defendants knowingly benefited from engaging in a venture with the trafficker and with one another.

25. The repeated rental transactions between the trafficker (and persons acting at the trafficker's direction) and the Subject Hotel that occurred during the period Plaintiff was trafficked there were colored by overt indicators of sex trafficking, including the steady foot traffic of unaccompanied sex buyers to and from the rooms at all hours; her visibly impaired condition from the controlled substances; the verbal abuse and physical aggression directed at her by her trafficker in front of staff; the recurring rental of two to three rooms at a time by a single individual; the refusal of housekeeping service to the occupied rooms; and the used condoms, drug paraphernalia, and discarded undergarments and lingerie observed in those rooms — such that Defendants knew, or should have known, that they were renting rooms to, and facilitating, individuals engaged in sex trafficking, and Plaintiff in particular, in violation of the TVPRA.

26. A venture existed between the trafficker and the Franchisee Defendant at the Subject Hotel premises by means of the rooms repeatedly rented for the trafficking — whether rented by the trafficker or at the trafficker's direction — which rooms Defendants knew, or should have known, were being used for the sex trafficking of Plaintiff in violation of the TVPRA, and which

the parties wished to continue for profit. Upon information and belief, Plaintiff's trafficker operated at the property on a routine and repetitive basis, having found in the Subject Hotel a venue where he could conduct his operations without meaningful disruption.

27. The rooms used to traffic Plaintiff were rented and renewed by the trafficker or at the trafficker's direction. Any individual, other than Plaintiff, who booked, rented, renewed, or paid for a room at the Subject Hotel on behalf of or at the direction of the trafficker was a member of the trafficker's entourage and organization, acting as the trafficker's agent and aiding and abetting the trafficker and the success of the trafficking venture. Accordingly, every such rental transaction was conducted between the Subject Hotel and Plaintiff's trafficking venture, and not with an independent or unaffiliated guest.

28. Discovery will inform whether the trafficker, or individuals at the trafficker's direction, booked rooms at the Subject Hotel that were used for the sex trafficking of Plaintiff in violation of the TVPRA: (a) under the registrant's proper legal name or a false name; (b) whether cash, prepaid card, debit card, or credit card was used at the time of the respective booking or renewal; and (c) whether the staff of the Franchisee Defendant required, for each booking, that the renter show identification.

29. A venture also existed between the Franchisee Defendant and the G6 Defendants pursuant to which the Subject Hotel was operated, branded, and controlled, and from which each derived ongoing revenue.

30. Relative to the Subject Hotel, a continuous business relationship existed between the Franchisee Defendant and the trafficker's sex trafficking business — and not merely with Plaintiff — in that the Franchisee Defendant provided assistance, support, or facilitation to the trafficker and to individuals it knew or should have known were engaged in sex trafficking on

the premises, in violation of the TVPRA, including as to Plaintiff; and in doing so lent culpable assistance to, and facilitated the success of, the trafficking venture.

31. Relative to the Subject Hotel, a continuous business relationship likewise existed between the Franchisor Defendants and the trafficker's sex trafficking business — and not merely with Plaintiff — in that the G6 Defendants provided assistance, support, or facilitation to the trafficker and to individuals they knew or should have known were engaged in sex trafficking on the premises, in violation of the TVPRA, including as to Plaintiff; and in doing so lent culpable assistance to, and facilitated the success of, the trafficking venture.

32. Through the conduct described above, each Defendant also knowingly benefited from engaging in a commercial venture with the other Defendants in operating the Subject Hotel. Defendants associated with one another and with the hotel staff to operate the Subject Hotel, engaged in revenue sharing, and had a common incentive to maximize revenue. Each Defendant received financial benefits from operating the Subject Hotel, including revenue generated specifically by renting the rooms used for the trafficking of Plaintiff. Upon information and belief, pursuant to the franchise agreement, the Franchisee Defendant was required to remit to the G6 Defendants a percentage of the gross room revenue generated at the Subject Hotel, together with additional fees calculated upon that revenue; the G6 Defendants therefore received a direct financial benefit from each room rented at the Subject Hotel, including each room rented for the trafficking of Plaintiff.

### E. The Franchisee Defendant and the Staff at the Subject Hotel Acted as the Actual Agents of the G6 Defendants.

33. The G6 Defendants exercised, or retained the contractual right to exercise, systematic, day-to-day control over the means and methods by which the Franchisee Defendant and hotel

staff operated the Subject Hotel — including its reservation, check-in, guest-identification, and payment systems (which the G6 Defendants required, operated, and linked to their corporate network); a brand-wide "do not rent" system and control over whether a reservation could be refused or cancelled; the technology and internet services at the property, including the provider and use restrictions and thus whether the websites commonly used to advertise and solicit commercial sex — including those on which Plaintiff was advertised — could be accessed there; mandatory brand, safety, and security standards, policies, and manuals; staff training they created and administered; and the standards for reporting and responding to suspected criminal activity, including human trafficking.

34. The G6 Defendants supplied the Subject Hotel's brand identity, signage, and marks, required the Motel 6 brand to be displayed throughout the property, and held themselves out to the public as its operators, such that guests perceived the Subject Hotel as a Motel 6 operated to the G6 Defendants' standards. The Franchisee Defendant and the hotel's staff therefore acted as the actual agents of the G6 Defendants in operating the Subject Hotel.

35. Through the franchise system, the G6 Defendants participated directly in aspects of the Subject Hotel's operation that influenced whether and to what extent trafficking occurred there — including by operating the reservation and payment systems through which its rooms were booked and paid for, dictating its safety- and security-related policies, and permitting the trafficker to reserve and pay for rooms on a short-term, night-by-night basis that afforded relative anonymity and non-traceability. As a result of these franchisor-mandated systems and policies, the trafficker operating at the Subject Hotel developed an ongoing business relationship with the property — through repeated room rentals and reliance on the G6 Defendants' policies — that created and sustained a favorable environment for trafficking, and, despite the ongoing

trafficking, Defendants continued renting rooms to the trafficker pursuant to those systems and policies without meaningful intervention.

## V. CAUSES OF ACTION

### COUNT I — Beneficiary Liability under 18 U.S.C. § 1595(a) (All Defendants)

36. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

37. Plaintiff was a victim of a violation of 18 U.S.C. § 1591(a).

38. Each Defendant knowingly benefited, financially and by receiving things of value, from its participation in a venture—the operation of the Subject Hotel—with the other Defendants and the staff of the Subject Hotel.

39. Each Defendant participated in that venture within the meaning of § 1595(a). Participation in a venture is satisfied by taking part in a common undertaking or a continuous business relationship involving risk and profit. The Franchisee Defendant participated through its continuous business relationship and pattern of dealing with Plaintiff's trafficker, and the G6 Defendants participated through their continuous business relationship with the Franchisee Defendant and their operation, branding, control of, and profiting from the Subject Hotel, all as alleged above.

40. Each Defendant knew or should have known that the venture was engaged in sex trafficking in violation of 18 U.S.C. § 1591(a), based on the red flags apparent at the Subject Hotel and Defendants' actual and constructive knowledge of pervasive sex trafficking at Motel 6–branded properties.

41. Defendants are therefore liable to Plaintiff under 18 U.S.C. § 1595(a).

### COUNT II — Vicarious Liability for TVPRA Violations (G6 Defendants)

42. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

43. The Franchisee Defendant and the staff of the Subject Hotel acted as the actual agents of the G6 Defendants in operating the Subject Hotel, and the G6 Defendants exercised, or retained the right to exercise, systematic and day-to-day control over the means and methods of that operation.

44. The G6 Defendants are vicariously liable for the TVPRA violations of the Franchisee Defendant and the staff of the Subject Hotel committed within the scope of that agency.

## VI. DAMAGES

45. Defendants' involvement in, and their failure — by and through their agents, employees, and staff — to timely and properly prevent the sex trafficking of Plaintiff or to timely intervene, was a proximate cause, competent producing cause, and substantial factor in causing Plaintiff's severe injuries, including but not limited to being the victim of sex trafficking at the Subject Hotel and suffering the physical and mental trauma of being induced to engage in commercial sex with numerous sex buyers while being trafficked, all while under the force, fraud, and coercion of her trafficker, together with all residual injuries, including post-traumatic stress disorder.

46. Plaintiff's sex trafficking at the Subject Hotel was a proximate cause, competent cause, and substantial factor in causing her severe and permanent injuries, including but not limited to the horror of being a victim of sex trafficking and significant psychological trauma resulting from the abuse she was caused to endure. This trauma has led to depression, anxiety, substance abuse, and post-traumatic stress disorder, which continue to impair her daily functioning.

47. As a direct and proximate result of Defendants' conduct and their multiple failures to adopt, implement, enforce, and modify adequate anti-trafficking measures at the Subject Hotel, Plaintiff was sex trafficked, sexually exploited, and repeatedly victimized at the Subject Hotel in violation of the TVPRA.

48. As a consequence of being sex trafficked at the Subject Hotel, Plaintiff has suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, and psychological injuries, in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants, jointly and severally, and award: (a) all available compensatory damages for the losses described above; (b) past and future emotional distress; (c) consequential and/or special damages; (d) all available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life; (e) physical pain and suffering; (f) disgorgement of profits obtained through unjust enrichment; (g) restitution; (h) all damages allowable under the TVPRA; (i) reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1595(a); (j) punitive damages with respect to each cause of action; (k) costs of this action; (l) pre- and post-judgment interest and all other interest recoverable; and (m) such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 24, 2026

Respectfully submitted,

/s/ Jason Byrd
Jason Byrd
448 Orleans
Beaumont, TX 77701
Telephone: (409) 924-0660
Facsimile: (409) 924-0035
jason@txbyrd.com

Randolph D. Janis, Esq.
DOUGLAS & LONDON, P.C.
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
rjanis@douglasandlondon.com

Chloe Makowsky, Esq.
DOUGLAS & LONDON, P.C.
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
cmakowsky@douglasandlondon.com

Attorneys for Plaintiff